# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CP-00059-COA

**ALISSIA WASHINGTON**                                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                    **APPELLEE**

DATE OF JUDGMENT:            12/15/2023
TRIAL JUDGE:                 HON. STEVE S. RATCLIFF III
COURT FROM WHICH APPEALED:   MADISON COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:      ALISSIA WASHINGTON (PRO SE)
ATTORNEY FOR APPELLEE:       OFFICE OF THE ATTORNEY GENERAL
                             BY: BARBARA WAKELAND BYRD
NATURE OF THE CASE:          CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                 AFFIRMED - 06/03/2025
MOTION FOR REHEARING FILED:

**BEFORE BARNES, C.J., McDONALD AND LAWRENCE, JJ.**

**LAWRENCE, J., FOR THE COURT:**

¶1.    Alissia Washington pled guilty to possession of cocaine with intent to distribute, conspiracy to possess cocaine with intent to distribute, and possession of cocaine with intent to distribute within 1,500 feet of a church. She was sentenced to a total of fifty years, with forty years to serve and the last ten years suspended, in the custody of the Mississippi Department of Corrections (MDOC). Washington filed a motion for post-conviction relief (PCR) in the Madison County Circuit Court. The circuit court denied and dismissed her motion. Aggrieved, Washington appeals.

## FACTUAL AND PROCEDURAL HISTORY

¶2. On January 13, 2020, Alissia Washington and Lucas Montel Howard[1] were indicted by a Madison County grand jury for possession of cocaine (a schedule II controlled substance) with intent to distribute in violation of Mississippi Code Annotated section 41-29-139 (Rev. 2018) and conspiracy to possess cocaine with intent to distribute in violation of Mississippi Code Annotated section 97-1-1 (Rev. 2014). On the same date, Washington was individually indicted in a separate cause for possession of cocaine with intent to distribute in violation of section 41-29-139. The crime was enhanced by Mississippi Code Annotated section 41-29-142 (Rev. 2018) because it occurred within 1,500 feet of a church.

¶3. Washington waived her arraignment and entered a plea of not guilty on January 29, 2020. On September 28, 2020, however, the circuit court held a guilty plea hearing. At the hearing's end, Washington pled guilty to possession of cocaine with intent to distribute, conspiracy to possess cocaine with intent to distribute, and possession of cocaine with intent to distribute within 1,500 feet of a church in a separate cause. A judgment of conviction was entered on September 29, 2020.

¶4. On October 14, 2020, the circuit court conducted a sentencing hearing. At the hearing, the State noted that Washington was a first-time offender but still faced a possibility of up to 110 years in MDOC custody. The State also stated that its plea offer to Washington was fifty years in custody, and the State requested she be sentenced to the same. Further, Washington had "refused to incriminate her codefendant" and appeared to be "taking the

---

[1] Howard also uses "BAM" as an alias.

rap" for him by claiming "the dope was hers even though there was no evidence supporting that." Counsel for Washington argued there were clear signs Howard had groomed her, mentioning her young age and the age difference between them. Overall, Washington's counsel asked the judge to consider her status as a first-time offender and that she had never received "drug treatment" before.

¶5. Before issuing a sentence, the circuit judge stated on the record that he considered Washington's status as a first-time offender. He noted, "The one thing that st[u]ck[] out to [him] more than anything . . . is not the fact that . . . she's not going to point at a codefendant and she was young[.]" Rather, the jail calls she made evidenced that while Howard was in jail, Washington was "dealing dope on his behalf." Therefore, the circuit court sentenced Washington to serve ten years for possession of cocaine with intent to distribute, ten years for conspiracy to possess cocaine with intent to distribute, and thirty years for possession of cocaine with intent to distribute within 1,500 feet of a church, with the last ten years suspended, in the custody of the MDOC.[2] All three sentences were ordered to run

_____

[2] The sentencing order was entered on October 21, 2020. Washington calls attention to the fact that the order incorrectly states that she entered a guilty plea on October 28, 2020. The order was not amended to state the correct date. This Court has previously held, however, that typographical errors and scrivener's errors are not always grounds for reversal. *See Rush v. State*, 125 So. 3d 84, 86 (¶9) (Miss. Ct. App. 2013) (holding the discrepancy in an order where one judge was listed as presiding over the case and another judge signed it was "merely a scrivener's or clerical error") (citing *Isaac v. State*, 968 So. 2d 951, 956 (¶¶16-17) (Miss. Ct. App. 2007) (finding that a sentencing order containing a different defendant's name once while "styled appropriately" and referring to the correct defendant four times was "a harmless clerical or scrivener's error")).

consecutively to each other.

¶6.     On October 24, 2023, Washington filed a PCR motion[3] in the Madison County Circuit Court, asserting claims under two portions of the Mississippi Uniform Post-Conviction Collateral Relief Act (UPCCRA).[4]     Washington argued that "her sentences [we]re disproportionate, unequal, and discriminatory on the basis of race when compared to sentences given to members of a race other than hers for the same crimes[.]"   She also asserted she received ineffective assistance of counsel due to a failure to present mitigating evidence regarding her age at the sentencing hearing.

¶7.     On November 3, 2023, the circuit court entered an order calling for the transcripts

---

[3] Washington's PCR motion was entered into the record by the circuit court clerk on October 24, but the motion and its certificate of service indicate she "submitted the papers to prison authorities for mailing" on October 20. "Because [Washington's] motion was pro se and [s]he was incarcerated when [s]he mailed the notice of appeal, the prison mailbox rule applies." *Tingle v. State*, 285 So. 3d 708, 710 (¶11) (Miss. Ct. App. 2019) (citing *Sykes v. State*, 757 So. 2d 997, 1000-01 (¶14) (Miss. 2000)). "The prison mailbox rule states that a prisoner's motion is delivered for filing on the date that the prisoner submitted the papers to prison authorities for mailing." *Id.*

[4] Washington's motion invoked subsections (a) and (j), which provide:

(a) That the conviction or the sentence was imposed in violation of the Constitution of the United States or the Constitution or laws of Mississippi;

. . . .

(j) That the conviction or sentence is otherwise subject to collateral attack upon any grounds of alleged error heretofore available under any common law, statutory or other writ, motion, petition, proceeding or remedy.

Miss. Code Ann. § 99-39-5(a), (j) (Rev. 2020).

from Washington's guilty plea hearing and sentencing hearing, as well as a certified copy of her criminal file. On November 28, 2023, Washington requested the production of certain documents "involving sentencing Caucasians upon guilty plea(s) to drug offenses from October 1, 2010[,] through October 30, 2020." On the same day, she also filed a motion for leave to invoke the discovery process under Mississippi Code Annotated section 99-39-15(1) (Rev. 2020). The record contains no order denying these motions, but we can ascertain from the record that both were denied.

¶8.     On December 15, 2023, the circuit court denied Washington's requested relief and dismissed the PCR motion without conducting an evidentiary hearing pursuant to Mississippi Code Annotated section 99-39-11(2).[5] On January 12, 2024, Washington appealed pro se.

## DISCUSSION

¶9.     On appeal, Washington argues that the circuit court erred by dismissing her PCR motion without an evidentiary hearing because the claims she brought, "if believed as true[,] would entitle [her] to relief." She also argues the circuit court erred by dismissing her PCR motion without granting her request for discovery. "Summary dismissal of a motion for

---

[5] That section provides:

> If it plainly appears from the face of the motion, any annexed exhibits and the prior proceedings in the case that the movant is not entitled to any relief, the judge may make an order for its dismissal and cause the petitioner to be notified.

Miss. Code Ann. § 99-39-11(2) (Rev. 2020).

post-conviction relief is proper if it plainly appears from the record that the movant is not entitled to any relief[.]" *Mayhan v. State*, 26 So. 3d 1072, 1078 (¶21) (Miss. Ct. App. 2009) (quoting *Winston v. State*, 893 So. 2d 274, 276 (¶6) (Miss. Ct. App. 2005)).

¶10.    "The findings of the [circuit] court must be clearly erroneous in order to overturn a lower court's denial of a post-conviction relief motion." *Brown v. State*, 872 So. 2d 96, 98-99 (¶8) (Miss. Ct. App. 2004) (citing *McClinton v. State*, 799 So. 2d 123, 126 (¶4) (Miss. Ct. App. 2001)); *see also Smith v. State*, 354 So. 3d 396, 402 (¶21) (Miss. Ct. App. 2023) ("Unless a circuit court's decision was clearly erroneous or an abuse of discretion, the circuit court's denial or dismissal of a PCR motion will not be reversed." (quoting *Crockett v. State*, 334 So. 3d 1232, 1237 (¶13) (Miss. Ct. App. 2022))).    "However, if questions of law are raised upon appeal the standard of review is de novo." *Brown*, 872 So. 2d at 99 (¶8).

### I.    Evidentiary Hearing

¶11.    Washington is correct in contending that "[t]his Court and the Mississippi Supreme Court have held that a defendant's PCR motion that meets basic requirements is sufficient to mandate an evidentiary hearing[.]" *Smith*, 354 So. 3d at 403 (¶24) (quoting *Sanders v. State*, 846 So. 2d 230, 234 (¶13) (Miss. Ct. App. 2002)).  Crucially, however, that rule only applies "**unless it appears beyond a doubt that the movant can prove no set facts in support of h[er] claim which would entitle h[er] to relief**." *Id.* (emphasis added).  And circuit judges "enjoy[] wide discretion in determining whether to grant an evidentiary hearing." *Moore v. State*, 398 So. 3d 292, 295 (¶6) (Miss. Ct. App. 2024) (quoting *Smith*,

354 So. 3d at 404-05 (¶30)). "A post-conviction claim for relief is properly dismissed without the benefit of an evidentiary hearing where it is **manifestly without merit**." *Id.* (emphasis added). Also worth noting, caselaw states that "when the movant attaches an affidavit of another who supports the allegation, the trial court may be required to conduct an evidentiary hearing." *Tanner v. State*, 332 So. 3d 382, 386 (¶10) (Miss. Ct. App. 2022) (quoting *Sylvester v. State*, 113 So. 3d 618, 621 (¶9) (Miss. Ct. App. 2013)). However, Washington attached no affidavits to her petition from herself or any other party.

¶12. The circuit judge had two issues before him for review. First, Washington alleged her sentence was the result of race-based discrimination. This claim invoked the equal protection clause of the Constitution. *See* U.S. Const. amend. XIV. In order to succeed on an equal-protection claim, Washington "must show that the decisionmakers in h[er] case acted with discriminatory purpose." *Ronk v. State*, 172 So. 3d 1112, 1147 (¶100) (Miss. 2015) (quoting *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)). What is more, "**[s]tatistical evidence alone is insufficient to prove discrimination**." *Id.* (emphasis added) (citing *McClesky*, 481 U.S. at 292-97). Washington's argument, if statistics-based, provided no numerical data at all to support her assertion that "all members of the white race who entered pleas of guilty to drug offenses in this circuit court . . . were given sentences . . . substantially less than the sentence given to the member of the Black race in this case." More substance is necessary to establish an equal-protection claim.

¶13. Second, Washington asserted that she received ineffective assistance of counsel at her

7

sentencing hearing because her attorney did not present mitigating evidence of her "psychological immaturity" at the time of the charged offenses. This argument is without merit for several reasons. Most importantly, Washington was not a juvenile at the time of her crimes. She was nineteen years old for the first arrest and twenty years old for the second. Now, she claims that the ages of 18 through 25 should be treated similarly to ages under 18, but she provides no law to support this argument.[6] Additionally, Washington relies upon *Miller v. Alabama*, 567 U.S. 460 (2012), to support this argument. But that case specifically concerns juveniles and deals with sentences consisting of life without parole. Washington was not a juvenile in the eyes of the law and was clearly sentenced to serve forty years, with no mention of ineligibility for parole. Just as the previous argument, this assertion lacks merit. Washington certainly was not given the maximum sentence of 110 years, and she also received a shorter sentence than the State requested. Therefore, we find that the circuit judge in this case did not abuse his discretion by not conducting an evidentiary hearing and made no error dismissing Washington's PCR motion because the claims within it were "manifestly without merit." *Moore*, 398 So. 3d at 295 (¶6) (quoting *Smith*, 354 So. 3d at 404-05 (¶30)).

II.     **Motion for Discovery**

---

[6] Washington also cites a California case in support of this argument. However, not only is the case not binding on this Court, it does not hold that 18 through 25 years of age are "similarly situated with juveniles." *See In re Jones*, 255 Cal. Rptr. 3d 571, 573 (Cal. Ct. App. 2019). That section from the opinion is merely reciting an argument before debunking it. *Id.* at 574.

¶14. Finally, Washington argues the circuit court erroneously denied her motion for discovery. This motion specifically requested the circuit court's sentencing records of all Caucasians who entered guilty pleas "from October 1, 2010 through October 30, 2020[.]" Notably, the motion makes no mention of offering payment in exchange for such extensively sought records. "This Court recognizes that the state is not required to furnish documents free of charge where a defendant merely wishes to conduct a fishing expedition for grounds upon which to attack the conviction and sentence." *Kemp v. State*, 904 So. 2d 1137, 1139 (¶15) (Miss. Ct. App. 2004) (internal quotation marks omitted) (quoting *Fleming v. State*, 553 So. 2d 505, 507 (Miss. 1989)).

¶15. When reviewing the denial of discovery in this context, the PCR motion must have "withstood summary dismissal pursuant to [s]ection 99-39-11(2)"; if so, we ask whether the discovery requested was relevant to the PCR issues and whether the circuit court abused its discretion in denying discovery. *See id.* at (¶11) (citing *Fleming*, 553 So. 2d at 506).

¶16. We first address the PCR's summary dismissal. "Before summarily dismissing a motion for post-conviction relief, the trial court must examine the original motion, together with all the files, records, transcripts and correspondence relating to the judgment under attack." *Mayhan*, 26 So. 3d at 1078 (¶21) (citing Miss. Code Ann. § 99-39-11(1) (Rev. 2007)). Here, the circuit judge certainly examined Washington's case. The judge entered an order mandating that transcripts from both Washington's plea and sentencing hearings be produced for review following her PCR filing. The judge additionally ordered that

Washington's criminal file in both actions be produced for review as well. And as discussed in the previous section, "[s]ummary dismissal of a motion for post-conviction relief is proper if it plainly appears from the record that the movant is not entitled to any relief[.]" *Mayhan*, 26 So. 3d at 1078 (¶21) (quoting *Winston*, 893 So. 2d at 276 (¶6)). As discussed previously, we find no error in the circuit judge's dismissal of Washington's PCR motion because the claims were so clearly lacking merit.

¶17. Because Washington's PCR motion failed to withstand summary dismissal, it is not necessary to fully discuss the issue further. *See Kemp*, 904 So. 2d at 1139 (¶11). Briefly, however, this Court would note that Washington's discovery request was based solely upon her race-based discrimination argument in her PCR motion. As previously stated, she failed to properly establish an equal-protection claim; there is no reversible error in that determination made by the circuit judge. While the pertinence of the information could present somewhat of an argument, it fails to establish the motion should have been granted because we find the motion was properly summarily dismissed.

## CONCLUSION

¶18. Following review, this Court finds no reversible error by the circuit judge in summarily dismissing Washington's PCR motion without an evidentiary hearing or denying Washington's motion for discovery. Accordingly, we affirm.

¶19. **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., WESTBROOKS, McCARTY, WEDDLE AND ST. PÉ, JJ., CONCUR. WILSON, P.J., AND McDONALD, J., CONCUR IN PART**

**AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., NOT PARTICIPATING.**